**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**BOBBY LAIRD**
Reg. #12979-077                                                                                        **PLAINTIFF**

V.                              **CASE NO. 2:13CV00119 BSM/BD**

**UNITED STATES OF AMERICA                                                         DEFENDANT**

<u>**RECOMMENDED DISPOSITION**</u>

I.      **<u>Procedures for Filing Objections</u>:**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Brian S. Miller.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II. Introduction:

Plaintiff Bobby Laird, an inmate in the Bureau of Prisons's ("BOP") Federal Correctional Institution - Forrest City Low ("FCC-FC"), filed this case *pro se* under the Federal Tort Claims Act. Mr. Laird claims employees of FCC-FC's health services department were negligent in failing to treat his torn left rotator cuff. (Docket entry #2) He asserts that, during the delay in treatment, he has continuously suffered significant pain and limitation of motion. (#2 at p. 3)

Defendant, United States of America, has moved for summary judgment. (#22) Mr. Laird has responded to the motion. (#30, #31) For the reasons set forth below, the Court recommends that the Defendant's motion for summary judgment be DENIED.

## III. Factual Background:

On February 28, 2009, Mr. Laird injured his left shoulder when he fell down stairs at FCC-FC. (#2 at p. 2) He sought medical treatment for his shoulder injury from health services. Because of the pain and limitation of motion he continued to experience after conservative treatment, he requested an evaluation by an orthopedic specialist. (#2 at pp. 2-3)

On May 11, 2011, Mr. Laird was examined by Bret R. Sokoloff, M.D., an orthopedic specialist. (#30 at pp. 33-37) Dr. Sokoloff diagnosed a complete rupture of the rotator cuff, small right, possible large left; osteoarthrosis localized primary, shoulder region; adhesive capsulitis of shoulder; and moderate degeneration of thoracic or lumbar intervetebral disc. (*Id*. at 36)  He administered a steroid injection in Mr. Laird's left shoulder and requested an MRI of Mr. Laird's left shoulder prior to his return. (*Id*.)

On June 20, 2011, Mr. Laird presented to health services complaining of burning sensation in his left shoulder. He advised the provider that Dr. Sokoloff had recommended an MRI, but it had not been scheduled. (*Id*. at 38)  The next day, Mr. Laird was examined by Michelle Wingo, PA-C.[1]  She noted an "obvious deformity to left biceps" and a decrease in range of motion in his left shoulder. (*Id*. at 39)  She requested a consultation for orthopedic surgery. (*Id*. at pp. 39-40)

In an administrative note dated June 27, 2011, Nader Peikar, M.D., noted that an MRI of Mr. Laird would be obtained prior to his next appointment with Dr. Sokoloff, which was scheduled for the third week in July. (*Id*. at 41)

Mr. Laird returned to Dr. Sokoloff for follow-up appointment on July 20, 2011. Mr. Laird complained that he was feeling worse and stated that his pain was a seven out of ten on the pain scale. Dr. Sokoloff noted that Mr. Laird had not had an MRI of his left

---

[1]Physician Assistant-Certified.  Neal M. Davis, *Medical Abbreviations: 15,000 Conveniences at the Expense of Communications and Safety*, 242 (10th ed. 2001).

shoulder, as the doctor had recommended. (#30 at p. 44) Dr. Sokoloff reviewed results of a right-shoulder MRI completed December 1, 2010, and noted a small, full thickness tear of the distal supraspinatus tendon. (*Id*. at 45) He stated he needed an EMG/NCV[2] of Mr. Laird's upper extremity so that he could further evaluate Mr. Laird's motion and strength loss. He requested that health services schedule the test "ASAP" and forward him the results. He also requested a cervical MRI. (*Id*.) He noted that "marked weakness and loss of motion appears proximal to shoulders as source." (*Id*.) He administered another steroid injection. (*Id*. at 44)

Over a month later, on August 24, 2011, Misty Rios, R.N., wrote an administrative note requesting a neurology consultation for an EMG/NCV of Mr. Laird's upper extremity to be scheduled "ASAP." She also noted Dr. Sokoloff's request for a cervical MRI. (*Id*. at p. 46)

On October 4, 2011, Mr. Laird was seen at health services for continued intermittent pain to his left shoulder and decreased movement. (*Id*. at 48) Physician Assistant Wingo noted that orders had been written for the EMG/NCV and MRI, and she requested that a consultation for orthopedic surgery be scheduled. (*Id*. at 49)

Dr. Peikar reviewed Mr. Laird's medical records related to his shoulder injury again on November 9, 2011. He noted, "MRI of left shoulder done on 7-18-2011 with partial tear or tendonopathy." He acknowledged that Mr. Laird informed him that the

---

[2]Electromyograph/nerve conduction study. Davis, *supra,* at 116, 220.

referenced MRI results were from an MRI of Mr. Laird's *right* shoulder, not his left, which was more injured. (*Id*. at 50-51) Dr. Peikar decided to defer the EMG/NCV and orthopedic consult until a cervical MRI, scheduled for November 17, 2011, could be performed. (*Id*. at 52)

On December 7, 2011, Mr. Laird went to health services for a follow-up visit after having a cervical MRI. He complained of no pain and improved mobility in the right upper extremity, but complained of weakness and decreased mobility of left upper extremity and pain in the neck and shoulder. (*Id*. at 53) The November 17, 2011 MRI showed multilevel degenerative disc disease most pronounced at the C3-C4 level as well as the C5-C6 anc C6-C7 levels. (*Id*. at 54) Nurse Rios resubmitted a request for an EMG/NCV of Mr. Laird's upper extremities. (*Id*. at 55)

Mr. Laird returned to health services on January 18, 2012, claiming his neck pain was getting worse. He also wanted to check on the status of his consult appointments. Nurse Rios noted that the consults for the EMG/NCS and a follow-up with the orthopedic physician were "approved by URC on 12-29-2011. Pending F/U[3]." (*Id*. at 59)

Mr. Laird returned to Dr. Sokoloff for a follow-up appointment on March 27, 2012. Mr. Laird complained that his neck and left shoulder were worse but his right shoulder was improving. (*Id*. at 63) Dr. Sokoloff diagnosed adhesive capsulitis of the left shoulder, rotator cuff syndrome of shoulder, and allied disorders. He gave Mr. Laird

---

[3]Follow-up. Neal M. Davis, Davis, *supra,* at 136.

another steroid injection, and reviewed surgical options. (*Id*. at 63-64) Dr. Sokoloff wrote, "Please schedule EMG ordered 7-20-11 ASAP. Schedule appointment here as soon as complete. Please also send cervical MRI films if possible. Surgical options for neck reviewed with patient. Consider cervical block." (*Id*.) Dr. Sokoloff requested that Mr. Laird return after the EMG was completed. (*Id*. at 64) He prescribed naproxen. (*Id*. at 60)

On April 19, 2012, Laurie Steward, CRNP[4] entered an order for naproxen (an anti-inflammatory medication) and a consultation request for orthopedic surgery. (*Id*. at 71)

Mr. Laird returned to health services on July 25, 2012, requesting to see Dr. Sokoloff. (*Id*. at 72) On July 29, 2012, Mr. Laird checked on the status of his "neuro consult." (*Id*. at 73)

Nurse Rios noted, on August 8, 2012, that she could not send his neurosurgery consult without a current MRI ordered and completed. (*Id*. at 74, 78) She noted, "[w]ill order another MRI." (*Id*.) In email the same day, Nurse Rios questioned whether Mr. Laird needed another MRI, but she stated, "I ordered it like asked!" (*Id*. at p. 80)

Mr. Laird presented to health services on August 16, 2012, complaining of pain and numbness in upper arm-left. (*Id*. at p. 75)

At a visit to health services November 15, 2012, Mr. Laird complained of left shoulder and neck pain and requested results of a recent MRI of his spine that was taken

---

[4]Certified Registered Nurse Practitioner. Davis, *supra,* at 86.

on October 23, 2012.  (*Id*. at 84)  Physician Assistant Wingo noted that Mr. Laird had decreased range of motion in his left shoulder.  (*Id*. at p. 85)  Results of his MRI were not available.  (*Id*.)  She also noted that a neuro consult was scheduled for November 9, 2012, but that Mr. Laird had stated he was not taken to the consult.  She stated she would email the trip coordinator regarding rescheduling.  (*Id*.)

On February 22, 2013,  Sunhee Sohn-Robinson, RPA-C[5] examined Mr. Laird.  (*Id*. at 91)  Mr. Laird complained that he had experienced neck and shoulder pain for four years.  (*Id*.)  He stated he was awaiting a neurosurgery consult and wanted to know whether it had been scheduled.  (*Id*.)  Mr. Laird stated he felt like his shoulders were getting worse, and that the naproxen was not helping.  (*Id*.)  He requested referral to a specialist.  (*Id*.)

On March 13, 2013, Physician Assistant Wingo submitted a neurosurgery consultation request.  (*Id*. at 92)  She noted that Mr. Laird's EMG was completed on March 29, 2012, and, at his visit to Dr. Sokoloff on March 27, 2012, the doctor had requested that Mr. Laird return for follow-up appointment after the EMG was completed.  (*Id*. at 92)

William Resto, M.D., completed an administrative note on April 25, 2013.  He noted that Mr. Laird was evaluated by a neurosurgeon, Dr. Friedman, on April 3, 2013, and his impression was "[l]eft shoulder rotator cuff injury recommendation ortho

---

[5]Registered Physicians Assistant Certified.  Davis, *supra*, at 285.

evaluation." (*Id*. at 94) He ordered that the neurosurgeon consult report, MRI, and EMG results be sent to Dr. Sokoloff. (*Id*.)

Mr. Laird returned to the clinic on June 18, 2013, and was seen by Rosemary Stiles, NP.[6] Mr. Laird complained of bilateral shoulder pain. Nurse Stiles noted the neurosurgeon's April 3, 2013 impression of left shoulder rotator cuff injury and wrote that Mr. Laird was scheduled to see the orthopedist "soon." (*Id*. at 95)

On June 27, 2013, Mr. Laird returned to Dr. Sokoloff, who diagnosed a complete rupture of the rotator cuff. He stated the March 29, 2012 EMG was normal with no evidence of nerve entrapment. (*Id*. at 69, 100) He requested that Mr. Laird be scheduled for a shoulder MRI "ordered secondary to severity of reported SXS, weakness, loss of active motion, and chronicity, evaluate rotator cuff tear." (*Id*. at 69)

In an administrative note dated September 10, 2013, Dr. Resto noted Dr. Sokoloff's findings and requested a consultation to radiology for an MRI of Mr. Laird's left shoulder and a consultation with an orthopedist. (*Id*. at 101)

On October 23, 2013, Mr. Laird had an MRI of his left shoulder, but there was image distortion secondary to patient motion that limited the interpretative aspect of the study. (*Id*. at 102) The radiologist noted, however, that "[t]here appears to be rotator cuff pathology." (*Id*.) He recommended a sedation MRI. (*Id*.)

---

[6]Nurse Practitioner. Davis, *supra,* at 227.

In an administrative note dated November 8, 2013, Dr. Resto requested a consult to radiology for a sedation MRI. (*Id*. at 104)

On January 24, 2014, Agnella Prince notified Rhonda Pierce, Outside Medical Trip Scheduling at FCI-FC Low, that Mr. Laird had been scheduled for "arthroscopy with Sokoloff at Delta on 02/24/14 at 6:00 am-NPO, hold blood thinners x 7 days, the doctor is going to combine the MR arthrogram (radiology) consult since I did not have a provider that did the sedation MRI, he advised that when he scopes the patient he will be able to see without having it done." (*Id*. at p. 106)

On February 27, 2014, Mr. Laird was seen by Dr. Sokoloff for yet another follow-up appointment. (*Id*. at 107-08) Mr. Laird stated that his pain was the same and that medication was not helping. (*Id*. at 108) Dr. Sokoloff again diagnosed a full thickness rotator cuff tear. He wrote, "MR arthrogram left shoulder pain 2/27/2014: torn supraspinatus tendon with tiny band fibers extending to the rotator cuff insertion site. Clinically this could be classified as a full-thickness tear. Nonvisualization of the biceps tendon which is presumed to be torn. No evidence of slap lesion. There is mild irregularity of the posterior inferior glenoid labrum possibly related to old trauma." (*Id*. at 66, 109) Dr. Sokoloff noted that Mr. Laird had significant weakness and wrote, "please consider/arrange repeat EMG to rule out other source of weakness and numbness. Schedule left shoulder arthroscopy and rotator cuff repair with distal clavicle excision and acromioplasty after EMG completed and forwarded to office." (*Id*. at 66, 109-110)

Later that day, after returning from Dr. Sokoloff's office, Mr. Laird asked health services when his surgery was going to be scheduled. (*Id*. at 111)

On April 10, 2014, Roger E. Jones, M.D., Clinical Director at FCI Three Rivers sent an email asking Physician Assistant Wingo to "ensure the MRI left shoulder is ordered and f/u. Alsos [sic] ensure the ASAP EMG/NCV of upper extremities and MRI C-spine are done." (*Id*. at 115) On April 14, 2014, Margaret Rincon, PharmD, Rph., Health Services Administrator sent an email asking whether the EMG/NCV has already been done, and she referenced a report from July, 2011. Ms. Wingo replied on April 16, 2014, that she had forwarded it to his "MLP" Patricia Morehart. Hours later, Ms. Rincon sent an email to Ms. Morehart. (*Id*. at p. 115) Ms. Rincon stated that she had looked into Mr. Laird's case, and the February 27, 2014 orthopedic report requested the EMG be done and forwarded to their office for scheduling of "left shoulder arthroscopy and rotator cuff repair with distal clavicle excision and acromioplasty." (*Id*.) She stated that consults needed to be entered for an EMG, as soon as possible, and surgery as noted. (*Id*.)

Later that day, Kenneth L. Russell sent an email stating "We need to get these done ASAP. Reasoning is as follows 1–Pathological changes including possible neuro-changes that a delay of time could be permanent. 2–Physician states these need to be done ASAP, and that his OA can not account for the degree of pathology noted." (*Id*. at 117) In response, Ms. Rincon emailed Ms. Pierce and others stating "asap scheduling needed" and that the two procedures/exams needed to take place prior to the surgery. She

10

asked that the consults be faxed and that a follow-up phone call me made to express the urgency in scheduling the consults. (*Id*.)

An administrative note dated April 16, 2014, indicates that P. Morehart, APN, ordered an EMG/NCV to be scheduled as soon as possible, and an MRI of the cervical spine and consult for orthopedic surgery be scheduled as soon as the EMG is completed. (*Id*. at 116)

Dr. Sokoloff advised Mr. Laird not to delay having the surgical procedure required to repair his rotator cuff tear because delay could make the procedure less effective in restoring full use of his left arm. (*Id*. at 120) Brenda Hoy, Assistant Hospital Administrator, advised Mr. Laird in late May, 2014, that the medical department would procure the required tests, and he would receive the needed surgical repair of his torn rotator cuff, but as of August 18, 2014, he still had not had the surgery. (*Id*. at 120-21)

**IV.    Discussion:**

    **A.    Standard**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not come forward with enough evidence to establish a necessary element of any claim, the moving party is entitled to judgment as a matter of law on those claims. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

B. **Federal Tort Claims Act**

Mr. Laird is pursuing his claim under the Federal Tort Claims Act ("the Act"). Under the Act, the law of the state where the alleged tort occurred controls. *Glorvigen v. Cirrus Design Corp.,* 581 F.3d 737, 743 (8th Cir. 2009). The parties agree that the alleged medical negligence in this case occurred in Arkansas.

Mr. Laird alleges that employees of the FCI–FC failed to treat his torn rotator cuff. When a medical negligence claim involves a medical provider's failure to properly diagnose, assess, and manage care and treatment, the claim falls under Arkansas's Medical Malpractice Act. *Dodd v. Sparks Regional Medical Center,* 90 Ark.App. 191, 198, 204 S.W.3d 579, 583 (2005).

Under Arkansas law, "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge," a plaintiff has the burden of proving, by expert testimony, the applicable standard of care, the defendant's breach, and that defendant's breach proximately caused injury that would not otherwise have occurred.

See ARK. CODE ANN. § 16-114-206(a); see also *Broussard v. St. Edward Mercy Health System, Inc.*, 2012 Ark. 14, 386 S.W.3d 385 (Ark. 2012) (holding that statute's requirement for expert medical testimony by medical provider in same specialty as defendant to be in violation of separation of powers).

In its motion for summary judgment, the government argues that, because Mr. Laird has not retained a medical expert, he will never be able to meet his burden to prove the three elements. Arkansas courts have held, however, that "expert testimony is not necessary *per se* in every medical malpractice case." *Watts v. St. Edward Mercy Med. Ctr.*, 74 Ark. App. 406, 410, 49 S.W.3d 149, 152 (2001) (citations omitted) (holding expert testimony not needed where hospital record supported plaintiff's claim of pain caused by delay). Expert testimony is not required when the asserted negligence lies within the jury's comprehension as a matter of common knowledge. *Id*.

The Court finds that because Dr. Sokoloff diagnosed Mr. Laird with a torn rotator cuff, recommended surgery, and expressed the need for prompt surgical repair of the rotator cuff, the negligence in delaying treatment is within a fact-finder's comprehension as a matter of common knowledge. Based on the evidence currently before the Court, the question of negligence for failing to treat Mr. Laird's torn rotator cuff and liability for the pain Mr. Laird has suffered while awaiting treatment is a fact question for the trial court.[7]

---

[7] A Federal Tort Claims Act claimant is not entitled to a trial by jury, 28 U.S.C. § 2402, notwithstanding that jury trials are allowed for medical malpractice claims in Arkansas. See *Mader v. United States*, 654 F.3d 794, 797, fn1 (8th Cir. 2011); *Fulton v.*

See *Gonzalez v. Jiminez*, No. 2:05-cv-00269-SWW-JJV, 2010 WL 4054294, *5 (2010) (recommendation to deny summary judgment adopted by docket entry #150) (finding that an expert is not required to prove the standard of care in failing to diagnose a broken ankle and the pain suffered while awaiting a proper diagnosis and treatment).

**V.     Conclusion:**

The Court recommends that the United States of America's motion for summary judgment (#22) be DENIED.

DATED this 23rd day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

*U.S.*, 198 Fed. Appx. 210 (3rd Cir. 2006).

*Mader v. United States*, 654 F.3d 794, 797, fn1 (8th Cir. 2011)